THOMPSON, Presiding Judge.
An earlier opinion of this court set forth the procedural history of this case as follows:
“In March 2008, R.W.B. (‘the father’) filed a complaint seeking to terminate the parental rights of his former wife, I.S.T. (‘the mother’), to the parties’ minor child, J.B. (‘the child’). References in the record indicate that, at approximately the same time, the father also filed a separate action seeking to modify the visitation provisions of the judgments pertaining to the parties’ divorce and their postdivorce litigation. The transcript of the ore tenus hearing in this matter indicates that the juvenile court considered the actions together and that it treated the modification-of-visitation claim to be moot after it reached its decision to terminate the mother’s parental rights. On June 15, 2009, the juvenile court entered a judgment terminating the mother’s parental rights to the child. The mother timely appealed.”
I.S.T. v. R.W.B., 42 So.3d 128, 128 (Ala.Civ.App.2010) (“I.S.T. I”).
In I.S.T. I, supra, this court reversed the termination judgment because the juvenile court had applied an incorrect standard. This court explained:
“Our legislature has specified that parental rights may be terminated only if the trial court receives ‘clear and convincing evidence’ supporting the termination. Specifically, the 1984 Child Protection Act, § 26-18-1 et seq., Ala.Code *429 1975, which governed actions pertaining to the termination of parental rights, specified, in part:
“ ‘If the court finds from clear and convincing evidence, competent, material, and relevant in nature, that the parents of a child are unable or unwilling to discharge their responsibilities to and for the child, or that the conduct or condition of the parents is such as to render them unable to properly care for the child and that such conduct or condition is unlikely to change in the foreseeable future, it may terminate the parental rights of the parents.’
“§ 26-18-7(a), Ala.Code 1975. See also D.O. v. Calhoun County Dep’t of Human Res., 859 So.2d 439, 443 (Ala.Civ.App.2003) (‘A nonparent who seeks to terminate a parent’s parental rights must prove by clear and convincing evidence that the children are dependent and that there are no viable alternatives to the termination of parental rights.’); and Ex parte Beasley, 564 So.2d 950 (Ala.1990) (same).”
I.S.T. I, 42 So.3d at 128-29 (footnote omitted).
On February 6, 2010, the juvenile court entered a judgment identical to the original termination judgment except for a statement indicating that it had found, by clear and convincing evidence, that the mother’s parental rights should be terminated. The mother timely appealed.
The record indicates that the parties are divorced; the date of that divorce judgment is not contained in the record on appeal. The record indicates that the same judge who entered the divorce judgment presided over this matter as a juvenile court judge.
At the time of the June 3, 2009, termination hearing, the child had recently completed the second grade, and he turned eight years of age in the month after the termination hearing. The father testified that he has been the primary physical custodian for the child since 2004 or 2005.
The father alleged that the mother used illegal drugs, but his testimony provided no details regarding that allegation. The father also stated that the mother had been arrested numerous times since he had obtained custody of the child. The father alleged that those arrests included charges of possession of drug paraphernalia. The record contains no other evidence pertaining to those alleged charges.
The mother denied that she currently uses illegal drugs, and she stated that she goes to a methadone clinic. According to the mother, the terms of the parties’ divorce judgment provided that each would submit to the other’s request for a drug-screen test but that the requesting party had to pay for the test; the mother stated that the father had never requested that she submit to a drug-screen test.
The mother admitted to having been arrested eight times since 2005. The mother explained that those recent arrests were for outstanding warrants or tickets; she insisted that none of the arrests was drug-related and that, with respect to drugs, she had “remained out of trouble for over two years.”
It is undisputed that in the three to four years before the termination hearing the mother had not maintained her own residence; rather, the mother had lived with men with whom she was in a relationship or had lived with her father when she was between relationships. In 2005, the mother was involved with a man and the court ordered that the mother not allow the child to have any involvement with that *430 man.[1] The mother then lived with a second man and then, until shortly before the termination hearing, with another man named Boyington.
The record does not set forth a clear picture of the frequency and nature of the mother’s visitation with the child before the spring of 2008. The father testified that the mother’s visitation with the child had been intermittent. He explained that when the mother was released after an arrest, she typically asked for visitation with the child and attempted a more appropriate lifestyle for a period of time. However, there is no evidence in the record pertaining to the length of the intervals between the mother’s visitation with the child.
The father testified that since 2005 the mother has violated the terms of the parties’ divorce judgment by visiting the child in the presence of the man with whom she was living at that time. The mother stated that she usually spent time alone with the child during at least some of the visitation, and she testified that the father had never objected to the presence of any of her boyfriends during visitation.
According to the father, in March 2008, when the child was in first grade, the mother began enforcing the visitation rights afforded her under the parties’ divorce judgment; we note that the father’s termination complaint was also filed in March 2008. The record is not clear as to whether the mother sought visitation in response to the father’s March 19, 2008, termination complaint or whether that complaint was filed in response to the mother’s seeking visitation with the child. Regardless, the father testified that law-enforcement officials had forced him to allow visitation at that time. The father stated that that was the most recent period during which the mother had spent any substantial time with the child.
The father stated that difficulties with visitation began immediately upon the resumption of the mother’s visitation. According to the father, the mother returned the child to his custody progressively later after each visit. The mother testified that the visitation occurred between March and June 2008, and that it went well. She stated that she exercised her alternating weekend visitation during that time and spoke on the telephone with the child every night.
The father testified that the mother was to have some extended visitation -with the child during the summer after he completed first grade. The father described the child as being reluctant to visit the mother at that time. Shortly after the child began visiting the mother, the mother became involved in a violent altercation with Boyington, the man with whom she was then living. The record does not clearly explain the sequence of events, but it is clear that the child was quickly returned to the father’s custody and has not visited the mother since that time. The father testified that the child had witnessed the confrontation between the mother and Boyington and that the child had been frightened by it.
The mother stated that the father has denied her visitation with the child since June 2008. The mother testified that she had attempted to visit the child at his school in November 2008 but that she had not been allowed to do so. The mother explained that although she requested assistance from law enforcement at that time, the officer refused to assist her in *431 enforcing her visitation rights. At that point in the mother’s testimony, the juvenile court judge indicated that she recalled that incident; the juvenile court judge stated that, on that occasion, the law-enforcement officer had contacted her and had stated that he was unwilling to enforce visitation because the mother appeared to be under the influence of something. The juvenile court judge further stated that she had instructed the law-enforcement officer to use his judgment in determining whether to assist the mother in obtaining visitation. The mother testified that she had not attempted to obtain visitation with the child after that November 2008 incident because, she stated, she wanted to wait for the scheduled court hearing on the father’s termination complaint.
The mother acknowledged that she had been involved in a pattern of continued domestic violence. The mother attempted to minimize that pattern by stating that she had been the victim in each of those incidents. The mother testified that she had ended her relationship with Boyington a week before the termination hearing.
The father alleged that the mother has bipolar disorder. The mother, however, stated that she has a “borderline personality disorder” for which she does not seek mental-health treatment; the mother contends that she does not need medication for that condition. The mother testified that, at the time of the termination hearing, she was taking Lortab for carpal tunnel syndrome. As explained, infra, the mother had not been employed for several years at that time.
The father alleged that the mother has not contributed to the support of the child and that she did not bring the child gifts on holidays or on his birthday. The mother stated that she had given the father $100 toward the child’s support, and she explained that the father had not let her be with the child on holidays or his birthday. The mother was not employed at the time of the termination hearing, and she admitted that she had last been employed, for a period of one month, in 2006. The mother stated that she had applied for Social Security disability benefits for some unspecified physical disability.
The father testified that the mother’s intermittent visitations and appearances in the child’s life have been stressful for the child. According to the father, he and the child never know when the mother might appear for visitation. The father alleged that the child’s school work declined after visitation with the mother resumed when he was in first grade but that his grades have improved in the time since the mother stopped visiting him. The mother testified, however, that she has a good relationship with the child and that the child is interested in being around her and “getting” to know her. According to the mother, at the time of the termination hearing she was living in her father’s home, but she intended to exercise visitation with the child in the home of her aunt.
At the conclusion of the termination hearing, the juvenile court stated:
“I’ve had this case before for the divorce-type and post-divorce-type matters. I do recall having to enter a rather structured order because there were concerns. That there were concerns on mom’s end of things that something wasn’t quite right. And that — with mom something wasn’t quite right, and with dad, there was an allegation that dad was trying to alienate the child, even back then. And as time has rocked on, it appears that for whatever reason mom has not seen the child, but I can’t be completely convinced that it is simply due to her just walking away; however, having said that, I do think that there is clear, convincing evidence that she suf *432 fers from some sort of emotional or mental illness such that she cannot care for the needs of this child. And that that is unlikely to change because that was the same concern that I had years ago as to why she didn’t have custody of this child. I think that it has continued on. And that I think that burden has been met on those grounds and I will grant the petition on those grounds.... I am not going to say it makes me happy to enter an order like that, but I think that it is something that I have to do considering the evidence that has been presented today.”
In its February 6, 2010, judgment terminating the mother’s parental rights, the juvenile court found, among other things, “that the emotional illness, mental illness, mental deficiency of the mother, and excessive use of alcohol and controlled substances, [are] of such duration or nature as to render the mother unable to care for the needs of the child.” The juvenile court also determined that there were no alternatives to, and that the child’s best interests would be served by, the termination of the mother’s parental rights.
The father filed his petition seeking to terminate the mother’s parental rights on March 19, 2008, before the January 1, 2009, effective date of the Alabama Juvenile Justice Act, § 12-15-101 et seq., Ala. Code 1975. Therefore, this case is governed by the former Child Protection Act (“the former CPA”), § 26-18-1 et seq., Ala.Code 1975 (repealed). The former CPA specified that a juvenile court could terminate parental rights under the following circumstances:
“(a) If the court finds from clear and convincing evidence, competent, material, and relevant in nature, that the parents of a child are unable or unwilling to discharge their responsibilities to and for the child, or that the conduct or condition of the parents is such as to render them unable to properly care for the child and that such conduct or condition is unlikely to change in the foreseeable future, it may terminate the parental rights of the parents. In determining whether or not the parents are unable or unwilling to discharge their responsibilities to and for the child, the court shall consider, and in cases of voluntary relinquishment of parental rights may consider, but not be limited to, the following:
“(1) That the parents have abandoned the child, provided that in such cases, proof shall not be required of reasonable efforts to prevent removal or reunite the child with the parents.
“(2) Emotional illness, mental illness or mental deficiency of the parent, or excessive use of alcohol or controlled substances, of such duration or nature as to render the parent unable to care for [the] needs of the child.
“(3) That the parent has tortured, abused, cruelly beaten, or otherwise maltreated the child, or attempted to torture, abuse, cruelly beat, or otherwise maltreat the child, or the child is in clear and present danger of being thus tortured, abused, cruelly beaten, or otherwise maltreated as evidenced by such treatment of a sibling.
“(4) Conviction of and imprisonment for a felony.
“(5) Unexplained serious physical injury to the child under such circumstances as would indicate that such injuries resulted from the intentional conduct or willful neglect of the parent.
“(6) That reasonable efforts by the Department of Human Resources ... leading toward the rehabilitation of the parents have failed.
*433 “(7) That the parent has been convicted by a court of competent jurisdiction of [certain enumerated crimes.]
[[Image here]]
“(8) That parental rights to a sibling of the child have been involuntarily terminated.
“(b) Where a child is not in the physical custody of its parent ..., the court, in addition to the foregoing, shall also consider, but is not limited to the following:
“(1) Failure by the parents to provide for the material needs of the child or to pay a reasonable portion of its support, where the parent is able to do so.
“(2) Failure by the parents to maintain regular visits with the child in accordance with a plan devised by the department ... and agreed to by the parent.
“(3) Failure by the parents to maintain consistent contact or communication with the child.
“(4) Lack of effort by the parent to adjust his or her circumstances to meet the needs of the child in accordance with agreements reached, including agreements reached with local departments of human resources or licensed child-placing agencies, in an administrative review or a judicial review.”
Former § 26-18-7.
When a custodial parent seeks to terminate the parental rights of the noncustodial parent, our supreme court has stated:
“The two-prong test that a court must apply in a parental rights termination case brought by a custodial parent consists of the following: First, the court must find that there are grounds for the termination of parental rights, including, but not limited to, those specifically set forth in § 26-18-7. Second, after the court has found that there exist grounds to order the termination of parental rights, the court must inquire as to whether all viable alternatives to a termination of parental rights have been considered....
“Once the court has complied with this two-prong test — that is, once it has determined that the petitioner has met the statutory burden of proof and that, having considered and rejected other alternatives, a termination of parental rights is in the best interest of the child — it can order the termination of parental rights. Such a construction of the Uniform 1984 Child Protection Act [now revised, reorganized, and replaced by the Alabama Juvenile Justice Act, § 12-15-101 et seq., Ala.Code 1975, effective January 1, 2009,] clearly comports with the stated purpose for the Act.”
Ex parte Beasley, 564 So.2d 950, 954-55 (Ala.1990).
On appeal, the mother asserts several arguments in support of her general contention that the juvenile court erred in terminating her parental rights. She contends that the evidence in the record on appeal is not sufficient to warrant the termination of her parental rights, and she maintains that there exist viable alternatives to the termination of her parental rights.
Specifically, the mother challenges the juvenile court’s finding that she suffered from a mental illness or that she used controlled substances or alcohol to the extent to render her unable to care for the child; the mother argues that the evidence in the record does not support that determination. The evidence in the record pertaining to the mother’s mental condition is the father’s statement that the mother suf *434 fers from bipolar disorder and the mother’s testimony that she has a borderline personality disorder. The record contains no other evidence pertaining to any mental condition of the mother or to how that condition has affected her ability to respond to the needs of the child. As indicated earlier, the juvenile court found that “something wasn’t quite right” with the mother. We acknowledge that the juvenile court was in the best position to observe the mother as she testified and to evaluate her demeanor. J.S.M. v. P.J., 902 So.2d 89, 96 (Ala.Civ.App.2004). However, we cannot agree that mere allegations of a diagnosed mental-health condition and the trier of fact’s determination that “something [is not] quite right” with a parent are sufficient grounds on which to base a termination of that parent’s parental rights. The record simply does not contain sufficient evidence on the issue of the mother’s mental condition.
The evidence in the record pertaining to the mother’s use of alcohol or illegal drugs is similarly vague. The record indicates that the mother has abused some substance at some point in the past. The evidence, however, does not address when the mother last abused that substance or her history of substance abuse. The father alleged that the mother had been arrested numerous times and that he thought those charges were related to drug offenses; the mother stated, however, that the arrests were related to tickets and other activity not involving drugs. The other references to drug or alcohol use contained in the record were that the mother was suspected to be under the influence as recently as November 2008, when her attempt at enforcing visitation was refused by the law-enforcement officer, the mother’s seeking assistance at the methadone clinic, and the mother’s taking Lortab for pain at the time of the termination hearing.
A review of the transcript and the juvenile court’s comments at the conclusion of the termination hearing indicate that the parties have presented evidence to the juvenile court judge on several different occasions; some of those occasions occurred when the juvenile court judge was serving in her capacity as the circuit court judge presiding over the parties’ divorce and postdivorce litigation. It appears from references by the parties and the manner in which they presented evidence that the juvenile court was very familiar with the history and underlying facts of this case. However, the record on appeal, which is all that this court has to review, does not contain those facts and underlying history.
We acknowledge that the juvenile court might have knowledge of facts, other than those submitted into evidence at the termination hearing, that are sufficient to warrant the termination of the mother’s parental rights. However, it was the burden of the father, as the party seeking to terminate the mother’s parental rights, to present clear and convincing evidence in support of termination. Former § 26-18-7(a), Ala.Code 1975; I.S.T. I, supra. “Clear and convincing evidence” is “ ‘Evidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion.’ ” L.M. v. D.D.F., 840 So.2d 171, 179 (Ala.Civ.App.2002) (quoting § 6-11-20(b)(4), Ala.Code 1975). Our review of the record on appeal leads us to conclude that the father did not, at the termination hearing transcribed in the record on appeal, present clear and convincing evidence warranting the termination of the mother’s parental rights. Accordingly, based on the record presented to this *435 court, we must reverse the juvenile court’s termination judgment.
We note that some of the evidence the father presented pertained to difficulties with or incidents during visitation and the distress that visitation caused the child. It is clear that the mother is not a model parent. However, many of the concerns regarding visitation may be addressed through a proceeding seeking to modify visitation.
REVERSED AND REMANDED.
PITTMAN and THOMAS, JJ., concur.
BRYAN and MOORE, JJ., concur in the result, without writings.

. It is not clear from the record whether the 2005 proceeding was the parties' original divorce action or a modification action.